IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RHONDA CLIFFORD,<br><br>                              Plaintiff,<br><br>v.<br><br>NATIONAL REPUBLICAN SENATORIAL COMMITTEE,<br><br>                              Defendant. | Case No.: 4:21-cv-744 |

**DEFENDANT NATIONAL REPUBLICAN SENATORIAL
COMMITTEE'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

Defendant, National Republican Senatorial Committee ("NRSC"), respectfully requests that the Court dismiss Plaintiff Rhonda Clifford's ("Plaintiff") Amended Complaint based on her failure to state a claim.

**INTRODUCTION**

On March 8, 2021, Plaintiff filed a facially deficient Complaint alleging certain violations under the Telephone Consumer Protection Act ("TCPA").[1] ECF No. 1. In that filing, Plaintiff alleged—with little to no supporting facts—that she improperly received text messages from Defendant. She sought statutory, punitive, and compensatory damages, as well as injunctive relief.

---

[1] On April 1, 2021, the U.S. Supreme Court, in a 9-0 decision (with Justice Alito concurring in the judgment), issued the much-anticipated decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). In *Facebook*, the Supreme Court overturned the Ninth Circuit and ruled that the TCPA's prohibition on an ATDS extends only to those systems that use a "random or sequential number generator." *Id.* at 1167. As the High Court said, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* (emphasis added). As most modern systems do not have the capacity to generate random or sequential numbers, they do not—as a matter of law—fall under the TCPA's ambit.

1

On April 2, 2021, Defendant filed a Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss Plaintiff's complaint. *See* ECF No. 8. Rather than responding to Defendant's motion to dismiss, Plaintiff filed an (untimely) motion to amend her pleading. *See* ECF No. 17. On August 10, 2021, the Court granted Plaintiff's request. ECF No. 27; *see also* ECF No. 29.

Despite having the advantage of a second bite at the pleading apple, Defendant has taken precious few steps toward correcting the deficiencies that doomed her original complaint. For this reason (and those that follow), the Court should dismiss her Amended Complaint in its entirety.

## ARGUMENT

Federal Rule of Civil Procedure 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, Rule 8 does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id.*

While the Court must accept all *factual* allegations as true, that "tenet . . . is inapplicable to legal conclusions." *Id.* Critically, the *Iqbal* standard requires a plaintiff to provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The claim must be more than conceivable and must instead be facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, there are no allegations, taken as true, that create the reasonable

inference that NRSC sent the messages in question or used an Automatic Telephone Dialing System ("ATDS") to do so.

### I. Plaintiff's Complaint Alleges No Plausible Set of Facts Demonstrating That Defendant Sent The Messages Using an ATDS.

A violation under the TCPA occurs when: "[A]ny person within the United States . . . make[s] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . " 47 U.S.C. § 227(b)(1)(A)(iii). Thus, for Plaintiff's complaint to survive a Rule 12(b)(6) motion to dismiss, she "must allege that the [D]efendant (1) called [her] cellular telephone number, (2) used an automatic telephone dialing system . . . to do so, and (3) lacked the plaintiff's prior express consent." *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018). Should she fail to properly plead any of those elements, she has failed to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* at 1005-06.

On April 1, 2021, the U.S. Supreme Court held that, to qualify as an ATDS, a device used to place a call—or in this case, send texts—"must have the capacity *either* to *store* a telephone number using a random or sequential [number] generator or to *produce* a telephone number using a random or sequential number generator." *Facebook, Inc.*, 141 S. Ct. at 1167 (emphasis added); *see also Dominguez v. Yahoo!, Inc.*, 2017 U.S. Dist. LEXIS 11346, at *3-4 (E.D. Pa. Jan. 27, 2017), *aff'd*, 894 F.3d 116 (3d Cir. 2018) (explaining that an ATDS must use a "random or sequential" number generator to either store or produce numbers and that "the phrase refers to the numbers themselves rather than the manner in which they are dialed"). Simply put, if Plaintiff failed to properly allege NRSC used a random or sequential number generator to either "store" or "produce" the number in question, then she has failed to properly allege the use of an ATDS—and thereby failed state a claim upon which relief can be granted. *See Facebook, Inc.*, 141 S. Ct. at 1167.

The Plaintiff's First Count alleges a violation of the TCPA premised on her allegations that "Defendant utilizes a dialing system which uses a random or sequential number generator to store telephone numbers" and "Defendant utilizes a dialing system which uses a random or sequential number generator to select the sequence of calls/text messages to be sent/made." *See* Am. Compl., ECF No. 29, ¶¶ 34-35. As an initial matter, Plaintiff offers little more than rampant "legal conclusions" and conjecture that the text(s) she purportedly received were sent by NRSC. She has provided no "factual content that allows the court to draw the reasonable inference that" NRSC actually sent Plaintiff any messages. *Iqbal*, 556 U.S. at 678. Indeed, her allegations concerning statements found on the NRSC website have no relevance to this case because those statements concern the NRSC's opt-in messaging program. *See, e.g.*, Am. Compl., ECF No. 29, ¶ 27. Taking Plaintiff's own allegations as true—that she "never consented to receive text messages from the NRSC," *id.* ¶ 18—therefore she was not a participant in NRSC's opt-in messaging program, and any discussion on the NRSC's website surrounding that program is wholly irrelevant to this matter. *See Id*. at ¶¶ 18-19.

Second, and of specific importance to analyzing Plaintiff's pleading failure—and preeminently important to this case overall—is the defined term "automatic telephone dialing system." The TCPA defines an ATDS or an autodialer as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). And as noted above, *supra* note 1, the U.S. Supreme Court has provided context regarding the sort of equipment that constitutes an ATDS. *Facebook*, 141 S. Ct. at 1167.[2] The Court made clear that the statutory definition encompasses

---

[2] District courts have already begun applying the narrow ATDS definition elucidated in *Facebook* in other TCPA cases, and in some instances have even narrowed it further. *See, e.g.*, *McEwen v. Nat'l Rifle Ass'n of Am. et al.*, 2021 U.S. Dist. LEXIS 72133, at *19 (D. Me. Apr. 14, 2021) ("After

only those devices that "have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. As such, Plaintiff must include some "factual content" showing NRSC used a random or sequential number generator to either "store" or "produce" the telephone number in question. *Iqbal*, 556 U.S. at 678.

Plaintiff here has shown neither. At the motion to dismiss stage, a plaintiff must properly allege sufficient facts that, taken as true, could lead to the reasonable inference NRSC used an ATDS. *See Iqbal*, 556 U.S. at 678. "Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 U.S. Dist. LEXIS 223796, at *7 (N.D. Tex. Nov. 2, 2017); *see also Adams v. Safe Home Sec. Inc.*, 2019 U.S. Dist. LEXIS 126522, at *2-3 (N.D. Tex. July 30, 2019) (noting that conclusory allegations, without additional details indicating that defendant placed calls using an ATDS, fail under the *Twombly/Iqbal* standards). Specifically, in pleading a TCPA cause of action, "it is entirely reasonable to demand that plaintiffs provide sufficient information about the timing *and content* of the calls they receive to give rise to the reasonable belief that an ATDS was used." *Curry v. Synchrony Bank, N.A.*, 2015 U.S. Dist. LEXIS 153131, at *5 (S.D. Miss. Nov. 12, 2015) (quoting *Aikens v. Synchrony Fin.* 2015 U.S. Dist. LEXIS 115467, at *4 (E.D. Mich. July 31, 2015)).

In this respect, Plaintiff has failed to "nudge[] [her] claim[] across the line from conceivable to plausible," and therefore, the Complaint should be dismissed. *See Twombly*, 550 U.S. at 570.

---

the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [Defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."). In addition, the U.S. Supreme Court has also recently vacated rulings from other circuits that adopted the broader definition of an ATDS. *See, e.g.*, *La Boom Disco, Inc. v. Duran*, __ S. Ct. __, 2021 U.S. LEXIS 2021, at *1 (Apr. 19, 2021) ("Judgment vacated, and case remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Facebook*[.]").

The Complaint contains nothing other than "conclusory allegations and threadbare assertions" that NRSC sent the messages in question or used an ATDS to send such messages. *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 508 (E.D. La. 2020) (citing *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014)). *See generally* Am. Compl., ECF No. 29.

While Plaintiff includes as an exhibit screenshots of four alleged texts, her only purported "factual content" supporting the argument that the texts were spent via an ATDS are conclusory allegations that: (1) the texts appeared "generic and obviously pre-scripted"; (2) they were "clearly sent out *en masse*"; and (3) NRSC's website contains language for its opt-in messaging program that mentions "recurring autodialed marketing messages." ECF No. 29 ¶¶ 26-28. These are, however, merely "speculative assertions without 'further factual enhancement[s].'" *Zelma v. Burke*, 2017 U.S. Dist. LEXIS 1209, at *11 (D.N.J. Jan. 4, 2017) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff essentially asks this Court to take her word that NRSC used an ATDS, and this Court should decline that invitation. Because Plaintiff's Amended Complaint infers only "the mere possibility of misconduct," it falls short of the required Rule 8 pleading standard. *Iqbal*, 556 U.S. at 679. Each of Plaintiff's ATDS-based allegations are addressed in turn below.

*First Allegation: Texts Were Generic and Pre-scripted*. By simply asserting that the texts in question appear "pre-scripted" and "generic," Plaintiff likely believes that she has carried her burden of plausibly alleging that the NRSC used an ATDS. ECF No. 29 ¶ 26. Plaintiff is wrong. Defendant expects that Plaintiff will rely on two cases—one from Washington, the other from Delaware—to support her argument: *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111 (W.D. Wash. 2013), and *Davis v. D.R. Horton Inc.*, 2020 U.S. Dist. LEXIS 44977 (D. Del. Mar. 16, 2020)). These cases fall short for multiple reasons.

6

First, *Gragg* is a pre-*Facebook* case from a district court in the Ninth Circuit that advanced a broad ATDS definition of the kind rejected in *Facebook*. Notably, other courts within the Ninth Circuit have reached the opposite conclusion from *Gragg* regarding the value of "generic" or "impersonal" text messages as implying the use of an ATDS. *Armstrong v. Investor's Bus. Daily, Inc.*, 2018 U.S. Dist. LEXIS 216246, at *15-16 (C.D. Cal. Dec. 21, 2018) (holding that an allegation Plaintiff received a "generic and impersonal" text message was not enough to "create an inference that an ATDS was in fact used").

The *Gragg* court also downplayed the importance of the content of the text as evidence an ATDS was used, opining instead that the focus should be on how the message was sent. 942 F. Supp. 2d at 1115 n.4 ("While these cases assuredly do not hold that generic message content is necessary to infer an ATDS, such a hypothetical holding could not be justified in any event."). Indeed, several courts across the country have disregarded the purported "generic," "impersonal," or "commercial" nature of the subject text as being indicative of an ATDS, without more.[3]

Along those lines, it is noteworthy the plaintiff in *Davis* also alleged the use of a "vanity short code"—which some courts have found sufficient to indicate an ATDS. 2020 U.S. Dist.

---

[3] *See, e.g.*, *Mantha*, 2020 U.S. Dist. LEXIS 45481, at *4 ("Contrary to Mantha's assertion, 'commercial content' does not, in and of itself, suggest use of an ATDS.") (citing *Thomas v. Peterson's Harley Davidson of Miami, LLC*, 363 F. Supp. 3d 1368, 1372 (S.D. Fla. 2018) (holding allegations that the text messages contained "commercial and generic content" only gave rise to a plausible inference of autodialing alongside additional "circumstances surrounding the text messages," including "the messages' ability to trigger an automated response by replying 'Y,' and that fact that 'the messages were sent from a short code'"); *Serban v. CarGurus, Inc.*, 2016 U.S. Dist. LEXIS 122066, at *11 (N.D. Ill. Sept. 8, 2016) (concluding the "promotional and generic [] nature" of the text messages contributed to a plausible inference an ATDS was used where the complaint also alleged the defendant used "SMS shortcodes to transmit anywhere from hundreds of thousands to millions of text messages similar to the one [the plaintiff] received to other individuals")); *Freidman v. Massage Envy Franchising, LLC*, 2013 U.S. Dist. LEXIS 84250, at *7-8 (S.D. Cal. June 13, 2013) (holding "[p]laintiffs simply assert here that the text messages they received were impersonal, without additional factual details to show that an ATDS was used").

LEXIS 44977, at *3. Here, however, Plaintiff has not and cannot allege a short code was used. According to the exhibits attached to the Amended Complaint, every text received by Plaintiff originated from a full, eleven-digit number (i.e., a long code).[4] ECF No. 29-1; *Mantha v. QuoteWizard.com, LLC*, 2020 U.S. Dist. LEXIS 45481, at *3 (allegations regarding use of "a long code does not . . . support a plausible inference that an ATDS was used.") (emphasis omitted). Further, the texts also originated from different phone numbers; Plaintiff has not alleged any of the numbers from which he received texts were registered to, or otherwise used by, Defendant. *See* ECF No. 29-1.

*Second Allegation: Text messages were allegedly "sent out en masse."* Without *any* factual support, Plaintiff next speculates that the text messages she received were "clearly sent out *en masse*," which, in her view, indicates that the NRSC used an ATDS. ECF No. 29 ¶ 28. As an initial matter, when presented with a similar question, the FCC recently opined that "[w]hether a certain piece of equipment or platform is an autodialer [does not] turn[] on . . . whether it can make a large number of calls in a short time." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991; P2P All. Petition for Clarification*, 35 FCC Rcd. 6526, ¶ 9 (2020). Likewise, the FCC also found that just because texts were purportedly sent to a "large volume" of numbers that is "not probative" of whether the equipment constitutes an ATDS. *Id.* ¶ 3 ("By this Declaratory Ruling, we clarify that the fact that a calling platform or other equipment is used to make calls or send texts to a large volume of telephone numbers is not probative of whether that equipment constitutes an autodialer under the TCPA.").

---

[4] "A short-code is a six-digit number that allows high-volume, application driver messaging . . . Long-codes are meant for person-to-person communications and can send only 1 message per record; short-codes can send 100 messages per second." *Barton v. Temescal Wellness, LLC*, 2021 U.S. Dist. LEXIS 42211, at *9 n.1 (D. Mass. Mar. 8, 2021) (citation omitted).

*Third Allegation: NRSC's website mentions "Recurring Autodialed Marketing Messages" with respect to its opt-in messaging program.* Finally, Plaintiff claims that certain language on Defendant's website indicating how an opting-in party can consent to receive autodialed messages sufficiently indicates Defendant used an ATDS. ECF No. 29 ¶ 27. This, of course, does not mean that Defendant uses an ATDS to communicate with parties, like Clifford, who did not consent to receive communications. *Id.* ¶ 18. In fact, the Eastern District of Pennsylvania, in a TCPA suit against the NRSC, recently rejected a plaintiff's identical reliance on NRSC's website language when it dismissed the plaintiff's complaint and found: "the NRSC's alleged use of 'recurring autodialed marketing messages' in its opt-in messaging program . . . *does not necessarily mean that it uses an ATDS to communicate with parties, like [Plaintiff], who did not consent to receive communications*." *Camunas v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 100125, at *13-14 (E.D. Pa. May 26, 2021).

Defendant expects that Plaintiff will rely on a District of New Jersey opinion, *Sieleman v. Freedom Mortgage Corp.* But the complaint in *Sieleman* included fact after fact supporting plaintiff's assertion the defendant used an ATDS to call him on at least four occasions. 2018 U.S. Dist. LEXIS 129698, at *2-3 (D.N.J. Aug. 2, 2018); Case No. 17-13110, ECF No. 1, (D.N.J. Dec. 14, 2017). Aside from the website language, *Sieleman* also included: (1) an allegation that a "noticeable" and "artificial pause/delay" was heard on "approximately four (4) calls he answered"; (2) a job listing from defendant indicating they were "seeking employees that have autodialing experience"; and (3) a message from defendant's website that "explicitly state[d] that it may use automated technology to contact consumers." 2018 U.S. Dist. LEXIS 129698, at *3; Case No. 17-13110, Compl., ECF No. 1 ¶ 16.

9

Plaintiff cannot ask this Court to simply ignore her factual allegations whenever they cut the wrong way (i.e., that she never opted-in to Defendant's text message program, *see* ECF No. 29 ¶ 18). Evidence that Defendant engages in a perfectly legal activity (like texting individuals who have opted-in to receive messages) cannot be sufficient evidence, without more, to indicate it used an ATDS to send these messages. *Davis*, 2020 U.S. Dist. LEXIS 44977, at *9 ("[J]ust because the complaint referred to the CallFire website does not mean that I have to accept as true all statements of the website pertaining to the functioning of CallFire's system" as potentially constituting an ATDS). Indeed, in addition to *Camunas*, cited above, just a few months ago, another district court similarly opined that language from a defendant's internal documents that mentioned an "auto-dialer" was insufficient to hold that the software in question therefore qualified as an ATDS. *Timms v. USAA Fed. Sav. Bank*, 2021 U.S. Dist. LEXIS 108083, at *9-10 (D.S.C. June 9, 2021) ("[T]he court agrees with Defendant that the mere fact that its internal documents called the Aspect UIP an 'auto-dialer' does not in and of itself impact whether Aspect UIP's functions actually qualify it as an ATDS pursuant to the statutory definition and [*Facebook*]."). This claim cannot save Plaintiff.

Finally, in a complete mis-application of *Facebook*, Plaintiff pleaded that "Defendant utilizes a dialing system which uses a random or sequential number generator to store telephone numbers" and to "select the sequence of calls/text messages to be sent/made." Am. Compl., ECF No. 29, ¶¶ 34-35. Since the Supreme Court decided *Facebook* earlier this year, two district courts have rejected the notion that such a factual assertion was indicative of the use of an ATDS—this Court should do the same. *See Hufnus v. Donotpay, Inc.*, 2021 U.S. Dist. LEXIS 118325 (N.D. Cal. June 24, 2021); *see also Timms*, 2021 U.S. Dist. LEXIS 108083.

\*   \*   \*

At bottom, Plaintiff has offered no more than the following conjectural *"because I said so"*: "Defendant utilizes a dialing system which uses a random or sequential number generator to store telephone numbers" and "Defendant utilizes a dialing system which uses a random or sequential number generator to select the sequence of calls/text messages to be sent/made." *See* Am. Compl., ECF No. 29, ¶¶ 34-35. Under all governing precedent, these threadbare allegations fail to push Plaintiff's pleadings from the "conceivable" to the "facially plausible." *See Twombly*, 550 U.S. at 570. Her complaint is, therefore, subject to dismissal under Rule 12(b)(6).

## II.   Plaintiff's "Do-Not-Call" Count has No Basis In Law or Fact.

Plaintiff's Amended Complaint states, on multiple occasions, that she placed her number on the Federal Trade Commission's ("FTC") National Do-Not-Call ("DNC") Registry. *See* ECF No. 29, ¶¶ 10, 11, 19, & 44. In so doing, Plaintiff alleges NRSC violated Section 227(c) by contacting her without consent, despite her number being on the DNC Registry. *Id.* ¶¶ 42-47.

But political calls and messages—such as the texts in question here—are expressly "exempt[]" from restrictions regarding calls to those on the DNC Registry. In fact, the FTC has itself made this observation on its official website. *See* Fed. Trade Comm'n, *The Do Not Call Registry*, *available at* https://www.ftc.gov/news-events/media-resources/do-not-call-registry (last visited September 7, 2021) ("There are some exemptions to the Do Not Call rules. Because of the limits to FTC's authority, the Registry does not apply to political calls[.]"). So too has the FCC— *i.e.*, the agency tasked with interpreting the TCPA, *see* 47 U.S.C. § 227(b)(2)—reached the same conclusion. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Rep. & Order, 18 FCC Rcd. at 14039-40 ¶ 37, 2003 WL 21517853, at \*14 ("[C]alls that do not fall within the definition of 'telephone solicitation' as defined in section 227(a)(3) [now (a)(4)] will not be precluded by the national do-not-call list. These may include surveys, market research, political or

11

religious speech calls.") (emphasis added). And, as the only circuit court to address this issue, the Tenth Circuit is in accord. *See Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228, 1234 (10th Cir. 2004), *cert. denied*, 543 U.S. 812 (Oct. 4, 2004) ("The national do-not-call registry's restrictions apply only to telemarketing calls made by or on behalf of sellers of goods or services, and not to charitable or political fundraising calls.") (citing 16 C.F.R. §§ 310.4(b)(1)(iii)(B), 310.6(a); 47 C.F.R. §§ 64.1200(c)(2), 64.1200(f)(9)) (emphasis added). Further, in another recent TCPA case filed against the NRSC in the Western District of Texas, that court easily dismissed the plaintiff's "Do-Not-Call" claims and found that "political organizations are exempt from the Do Not Call Registry. Plaintiff therefore cannot maintain such a claim against the NRSC. Accordingly, Plaintiff's § 227(c) claim will be dismissed." *Libby v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 140103, at *9 (W.D. Tex. July 27, 2021) (citation omitted).[5]

There can be no doubt that if a call is political in nature, it cannot support a DNC claim. Similarly, there can be no doubt that the purported text messages that Plaintiffs allegedly received were political in nature, despite her description of them as a "sales pitch." *See* ECF No. 29 ¶ 22; *see also id.* ¶ 12. In her Amended Complaint, Plaintiff pleaded "Defendant NRSC is a political organization that raises money for Republican Senatorial candidates[]"; it further sends messages to "prospective donors" as part of its "campaign fundraising strategy[.]" ECF No. 29, ¶¶ 16-17. Thus, taking these allegations as true, NRSC's texts are insufficient to state a DNC claim under Section 227(c) as a matter of law, as Plaintiff concedes they were "political."

---

[5] Defendant acknowledges that the court in *Libby* denied the Motion to Dismiss as to the ATDS claim. *See Libby*, 2021 U.S. Dist. LEXIS 140103 at *6-9. In addition to being contrary to the majority of other post-*Facebook* 12(b)(6) decisions, the *Libby* ATDS decision is inapplicable here as *Libby* analyzed a different complaint, filed by a different plaintiff, involving different messages. *Id.*

## **CONCLUSION**

For the aforementioned reasons, this Court should dismiss Plaintiff's Amended Complaint for failure to state a claim.

Respectfully submitted,

Dated: September 7, 2021
/s/ *Dallin B. Holt*
Dallin B. Holt
   *Attorney in Charge*
Texas Bar No. 24099466
S.D. of Texas Bar No. 3536519
Jason B. Torchinsky *(pro hac vice pending)*
Jonathan P. Lienhard *(pro hac vice pending)*
HOLTZMAN VOGEL BARAN
   TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
(540) 341-8808
(540) 341-8809 (fax)
DHolt@holtzmanvogel.com
jtorchinsky@holtzmanvogel.com
jlienhard@holtzmanvogel.com

*Counsel for National Republican Senatorial Committee*

## **CERTIFICATE OF SERVICE**

I filed this motion and with the Court via ECF, which will electronically notify all counsel of record.

Dated: September 7, 2021                                    /s/ Dallin B. Holt
                                                                                Counsel for Defendant